IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LENORA NEWSOME                                                    PLAINTIFF

VS.                          CASE NO. _____

WALGREEN CO.                                             DEFENDANT

## COMPLAINT

### Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658), 42 U.S.C.S. § 12101 (American with Disabilities Act), and the Age Discrimination in Employment Act (ADEA), which is codified at 29 U.S.C.S. §§ 621-634 in order to recover damages against the defendant for the unlawful employment practices that the plaintiff Lenora Newsome, has been subjected to on account of her race, age, sex, and disability. This is also an action for declaratory judgment pursuant to 28 U.S.C.S. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

### I.
### Jurisdiction

1. Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658)

1

2. The unlawful employment practices alleged to have been committed against the plaintiff, were committed in the State of Arkansas, and in Ouachita County, Arkansas.

## II.
## Parties

3. The plaintiff, Lenora Newsom, is an African American female, and is a resident of the United States of America.

4. The Defendant Walgreen Co., is a foreign for-profit corporation, and is licensed to do business in the State of Arkansas operating as a retail store selling pharmaceuticals and other retail items in the state.

5. The defendant Walgreen Co. (hereinafter referred to as Walgreen) is an employer within the meaning of 42 U.S.C.S. § 2000e (b), (g), and (h).

6. The Agent for Service of Process is The Prentice-Hall Corporation System, Arkansas, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

## III.
## Facts

7. The plaintiff is a licensed pharmacist having received her license in 1980 in the State of Texas. The plaintiff eventually moved back to Arkansas, and obtained her pharmacy license in 1981 in the State of Arkansas.

8. The plaintiff lives in Smackover, Arkansas, and was born on February 26, 1956.

9. The plaintiff went to work for Walgreen in November 2010. The plaintiff was the only African American pharmacist working for Walgreen in South Arkansas.

10. In July 2014, the plaintiff was transferred to work for the Walgreen Store located in Camden, Arkansas (Store # 15702), which is an express type Walgreen.

11. On or about May 29, 2019, the assistant pharmacist was terminated by Tabetha Beckwith, who was the then district manager.

12. Without having an assistant pharmacist, this made the plaintiff's job duties more difficult.

13. When the plaintiff was transferred to the Walgreen Store in Camden, Arkansas, she became the Pharmacy Manager (MGX).

14. On or about June 1, 2019, Bret Weatherford, who is a Caucasian male, became the District Manager, due to Store # 15702 being placed in District 407.

15. Shortly after being placed in District 407, with Bret Weatherford, becoming her district manager, the plaintiff began to experience acts of disparate treatment on account of her race, sex, age, and disability.

15. On the evening of June 19, 2019, Camden, Arkansas experienced a powerful storm that resulted in most of the city losing power.

16. Ms. Newsome contacted Mr. Weatherford, and told him what was going on, and he stated that she needed to keep the refrigerated drugs cool per protocol.

17. The plaintiff purchased some large coolers, and bags of ice, and iced down the drugs in order to keep them cool.

18. Mr. Weatherford contacted the plaintiff later about moving the drugs to El Dorado Walgreen, and the plaintiff advised that the El Dorado Walgreen Store was some thirty (30) miles away, and that the store probably did not have the room to store the drugs from the Camden store.

19. Mr. Weatherford did not respond to the plaintiff's concerns.

20. However, at approximately 9:30 p.m., on June 20, 2019, Mr. Weatherford asked the plaintiff whether she had moved the drugs to the El Dorado Walgreen Store, to which the plaintiff stated that she had iced down the drugs as previously discussed.

21. This was not acceptable to Mr. Weatherford; he instructed the plaintiff to moved the drugs to the El Dorado Store. However, the plaintiff advised Mr. Weatherford, that it would be dangerous for her to move the drugs late a night.

22. Ms. Newsome informed Mr. Weatherford, that it would not be safe, being an African American to go into a pharmacy after 10:00 p.m., during a blackout, because she did not want to be mistaken by the police as being a looter, and be shot.

23. Furthermore, Ms. Newsome explained to Mr. Weatherford that the Camden Store had experienced two attempted break ins, and that it would be dangerous for she and her husband to attempt to go into a pharmacy, late at night.

24. Mr. Weatherford was annoyed by the plaintiff's pleas to not be put in a dangerous situation, especially due to her race.

25. The drugs were eventually taken to the El Dorado Store on June 21, 2019, without any damage to them.

26. The plaintiff and her staff were able to weather the storm, and made it alright.

27. On July 15, 2019, the plaintiff was told that she needed to come to the store for an 8:00 a.m., meeting with Bret Weatherford to take place on July 16, 2019.,

28. When the plaintiff was enroute to the store, Mr. Weatherford sent a text message to the plaintiff stating that Justin Sharp, who is also a Caucasian male, would be present in the meeting as well.

29. During the meeting Justin Sharp asked the plaintiff was asked a series of questions about religion, and sexual orientation, and whether she had those types of discussions while at work.

30. Ms. Newsome stated that she did not engage in such things, and denied ever having those types of discussions in the workplace.

31. After these series of questions, Bret Weatherford then started saying negative things about the plaintiff's performance.

32. Mr. Weatherford was asking the plaintiff about knowing how to do "resets," and stated that she must do "resets" in order to be a manager at the store.

33. The plaintiff explained to Mr. Weatherford that she suffers from dyslexia, and had difficulty dealing with cash. Ms. Newsome also mentioned to Mr. Weatherford that she had a pharmacy tech, who was efficient in dealing with these issues.

34. Mr. Weatherford, also told the plaintiff that she would have to learn "on boarding," but that she was on her on in learning this system.

35. The plaintiff asked if Mr. Weatherford could provide a mentor to provide the training for "on boarding," and he stated "no, you are on your own."

36. Despite the fact that other managers, who are white, were afforded training by mentors with the on-boarding system, the plaintiff was not provided this assistance.

37. Mr. Weatherford refused to provide the plaintiff with the necessary assistance or support in order to allow her to be properly trained.

38. Despite the fact that the "on board" training manual states that the manager will be placed with another manager who has been trained with "on boarding," for a two-week period, the plaintiff was not afforded this training.

39. Throughout the plaintiff tenure while working under Bret Weatherford, he was constantly looking for things to criticize the plaintiff for.

40. Mr. Weatherford on one occasion sent a team of management officials to the Camden Store under the guise of cleaning, but it was ruse to again find any defects in the plaintiff's store in order to get rid of her.

41. There was one occasion when Mr. Weatherford directed the plaintiff to fire her pharmacy tech, who is an African American female, who had taken some out-of-date Chapstick out of the trash bin, that was meant to be discarded.

42. The plaintiff expressed to Mr. Weatherford that she did not believe that the termination was warranted, and that she felt that this African American female was being mistreated.

43. Again, the firing of this pharmacy tech left the plaintiff's store short staff.

44. The plaintiff had relied on this pharmacy tech (Monisha Jones) to handle the cash management, and had explained this to Mr. Weatherford.

45. Again, Ms. Newsome explained to Mr. Weatherford that due to her disability, it would be difficult for her to handle the cash management of the store.

46. Mr. Weatherford hired a friend of his by the name of Austin Lambert, a Causasian male, sometime in August 2019 to work as the assistant pharmacist in the Camden Store.

47. Upon information and belief, Mr. Lambert was hired in June 2019, after being terminated from Wal Mart as a pharmacist.

48. Mr. Lambert was brought in to replace the plaintiff.

49. The plaintiff was eventually placed on a Performance Improvement Plan (PIP) on or about February 26, 2020.

47. The plaintiff was eventually terminated from her place of employment with the defendant on May 4, 2020.

## IV.
### Disparate Treatment – Race

49. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 48, supra., inclusive as though set forth herein word for word.

50. The plaintiff was subjected to disparate treatment on account of her race in that similarly situated white employees received more favorable treatment on account of their race than the plaintiff was afforded.

51. White employees who were similarly situated as the plaintiff were allowed to work in an environment that was free from harassment, and close scrutiny.

52. White pharmacists were not treated to the constant scrutiny as the plaintiff was, and was afforded time to train, that was not extend to the plaintiff.

53. Similarly situated white pharmacist were not placed under a Performance Improvement Plant (PIP) as the plaintiff was.

54. Also, similarly situated white employees were not subjected to the type of hostility that the plaintiff was subjected to, on account of her race.

55. The plaintiff was subjected to the above-mentioned acts of disparate treatment all on account of her race, in violation of Title VII of the Civil Rights Act of 1964 (as amended), which is codified at 42 U.S.C.S. § 2000e *et seq.*.

56. Furthermore, the plaintiff has been subjected to less favorable terms and conditions of her employment contract with the defendant on account of her race, in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

## V.
## ADA Disability Claim

57. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 56, supra., inclusive as though set forth herein word for word.

58. The plaintiff constantly advised Mr. Weatherford that she suffers from dyslexia, and that she was not proficient in dealing with cash management.

59. Furthermore, the plaintiff advised Mr. Weatherford, that due to her disability, she needed someone to provide hands on training for the "on boarding" that the plaintiff was required to take.

60. The defendants denied the plaintiff's requests for reasonable accommodations.

61. Furthermore, the defendant did not engage in an interactive process with the plaintiff, despite the plaintiff requesting a reasonable accommodation for her disability.

62. Although the defendants could have made a reasonable accommodation for the plaintiff, it did not make a good faith effort to do so.

63. Rather than engaging in the interactive process with the plaintiff to find a reasonable accommodation, the defendants hired a Caucasian employee to fill the plaintiff's job.

64. Also, rather than engaging in the interactive process with the plaintiff, the defendant simply placed the plaintiff on a Performance Improvement Plan (PIP), which was not warranted, and eventually terminated the plaintiff.

## VI.
## Disparate Treatment – Sex

65. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 64, supra., inclusive as though set forth herein word for word.

66. In a ruse to terminate the plaintiff, the defendant hired a white male, for the purpose of replacing the plaintiff.

67. White males who are similarly situated as the plaintiff are afforded more favorable terms and conditions of their employment with the defendant, in that they are not scrutinized in the fashion that the plaintiff was, and they are given the support and the assistance that they need.

68. The plaintiff was subjected to the above-mentioned acts of disparate treatment all on account of her sex, in violation of Title VII of the Civil Rights Act of 1964 (as amended), which is codified at 42 U.S.C.S. § 2000e *et seq.*.

VII.

Age Discrimination in Employment Act (ADEA)

69. The plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 68, supra., inclusive as though set forth herein word for word.

70. The plaintiff Lenora Newsome is sixty-five (65) years old.

71. The defendant brought in a younger white male, with the goal of forcing the plaintiff out of her position as Pharmacy Manager.

72. Younger pharmacy managers, are afforded more favorable terms and conditions of the employment contract than the plaintiff.

73. The plaintiff was subjected to disparate treatment all on account of her age in violation of the Age Discrimination in Employment Act (ADEA), which is codified at 29 U.S.C.S. §§ 621-634.

74. Ultimately, the plaintiff was terminated from her place of employment with the defendant due to her age, in violation of the Age Discrimination in Employment Act (ADEA), which is codified at 29 U.S.C.S. §§ 621-634.

## VIII.
## Procedural Requirement

75. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 74, supra., inclusive as though set forth herein word for word.

76. On October 28, 2020, the plaintiff filed a Charge of Discrimination (No. 493-2021-00222) with the Equal Employment Opportunity Commission (EEOC), contending that she had been discriminated against in terms and conditions of her employment with the defendant, when he was subjected to disparate treatment on account of her race, age, sex, and disability in violation of Title VII of the Civil Rights Act of 1964 (as amended) and in violation of the American with Disabilities Act (ADA).

77. In response to the plaintiff's Charge of Discrimination that he filed with the EEOC, said agency issued a "Notice of Right to Sue" letter dated September 20, 2021, which *inter alia* gave the plaintiff the right to sue the defendant within 90 days from the date he received the above-mentioned letter. **(A copy of said "Notice of Right to Sue" letter is attached to this complaint and is identified as Plaintiff's Exhibit "A").**

78. The plaintiff has met the statutory requirement of filing this complaint within ninety (90) days after receiving the "Right to Sue" letter.

## IX.
## Damages

79. The plaintiff incorporates by reference the allegations contained in paragraphs 1-78 of the plaintiff's complaint, and adopts each as if set out herein word for word.

80. As a direct and proximate cause of the discriminatory practices that the defendants subjected the plaintiff to on account of her race, age, sex, and disability the plaintiff has suffered economic loss by way of lost wages in an amount to be proven at the trial of this matter.

81. Furthermore, due to the discriminatory acts of the defendants, the plaintiff has experienced mental anguish, embarrassment, pain and suffering in an amount to be proven at the trial of this matter.

82. Furthermore, the defendants' acts of discriminating against the plaintiff due to her race, sex, age, and disability, were committed with malice or in complete disregards towards the plaintiff's federally protected rights that an award of punitive damages is warranted.

83. Furthermore, the defendant's act of discriminating against the plaintiff due to her age, was done willfully, entitling the plaintiff to an award of liquidated damages.

## JURY DEMAND

84. The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above-described unlawful employment practices:

    a. declare that the plaintiff has been subjected to unlawful discriminatory practices on account of his race, sex, age, and disability;

    b. reinstatement and back pay;

    c. compensatory, liquated, and punitive damages;

    d. attorney's fees;

    e. the cost of prosecuting this action;

    f. and for all other equitable, legal, and just relief.

Respectfully submitted,

*[signature]*

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

Dated: December 17, 2021.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Lenora Newsome
P.O. Box 27
Smackover, AR 71762

From: Little Rock Area Office
820 Louisiana
Suite 200
Little Rock, AR 72201

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

EEOC Charge No.: 493-2021-00222

EEOC Representative: Matilda S. Louvring, Investigator

Telephone No.: (501) 324-5535

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

William A. Cash, Jr.,
Area Office Director

September 20, 2021
(Date Issued)

Enclosures(s)

cc: Kim Metrick
VP of Employment Law
WALGREENS EMPLOYMENT LAW
104 WILMOT RD
STOP 144W
Deerfield, IL 60015



PLAINTIFF'S EXHIBIT A